IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

JERMAINE L. CARTER,               )
                                  )
            Petitioner,           )
                                  )
     v.                           )   Civ. No. 14-595-SLR
                                  )
DAVID PIERCE, Warden, and         )
ATTORNEY GENERAL OF               )
THE STATE OF DELAWARE,            )
                                  )
            Respondents.          )

---

Jermaine L. Carter.  Pro se petitioner.

Gregory E. Smith, Deputy Attorney General, Delaware Department of Justice,
Wilmington, Delaware.  Counsel for respondents.

---

**MEMORANDUM OPINION**

July 𝒥𝑜 , 2016
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Currently before the court is Jermaine L. Carter's ("petitioner") application for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 ("application"). (D.I. 1) For the reasons that follow, the court will dismiss petitioner's § 2254 application as time-barred by the one-year period of limitations prescribed in 28 U.S.C. § 2244(d)(1).

## II. BACKGROUND

In December 2008, petitioner was indicted on numerous counts of first degree rape, second degree kidnapping, possession of a firearm during the commission of a felony ("PFDCF"), possession by a person prohibited, and first degree robbery. (D.I. 22 at 2) On December 18, 2009, petitioner pled guilty to first degree rape, second degree rape, first degree robbery, PFDCF, and two counts of second degree kidnapping. *Id.* On June 4, 2010, after reviewing a psychological report and conducting a colloquy, the Superior Court adjudged petitioner guilty but mentally ill, and sentenced him to life imprisonment, plus an additional thirty-five years. (D.I. 24, Sentencing Transcript (Del. Super. June 4, 2010); D.I. 24, Sentence Order (Del. Super. June 4, 2010)) Petitioner did not appeal that decision.

Petitioner filed a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion") on October 18, 2013, alleging ineffective assistance of counsel. (D.I. 24, Rule 61 Motion, Case ID No. 0810013184) Petitioner's Rule 61 motion is still pending before the Delaware Superior Court. (D.I. 22 at 4)

Thereafter, petitioner filed in this court a § 2254 application, and numerous supplemental and amended applications. Essentially, petitioner asserts four grounds

for relief: ineffective assistance of counsel; insufficient evidence/involuntary guilty plea;

incorrect and prejudicial excessive sentence; and actual innocence. The State filed an

answer, asserting that the application should be denied in its entirety as time-barred.

(D.I. 22)

## III.    ONE-YEAR STATUTE OF LIMITATIONS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") was signed

into law by the President on April 23, 1996, and it prescribes a one-year period of

limitations for the filing of habeas petitions by state prisoners. 28 U.S.C.

§ 2244(d)(1). The one-year limitations period begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct
> review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State
> action in violation of the Constitution or laws of the United States is removed, if
> the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by
> the Supreme Court, if the right has been newly recognized by the Supreme Court
> and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could
> have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). AEDPA's limitations period is subject to statutory and equitable

tolling. See Holland v. Florida, 560 U.S. 631 (2010)(equitable tolling); 28 U.S.C.

§ 2244(d)(2)(statutory tolling).

Petitioner's application, which is dated May 2014, is subject to the one-year

limitations period contained in § 2244(d)(1). See Lindh v. Murphy, 521 U.S. 320, 336

(1997). Petitioner does not allege, and the court does not discern, any facts triggering

2

the application of § 2244(d)(1)(B), (C), or (D). Thus, the one-year period of limitations in this case began to run when petitioner's conviction became final under § 2244(d)(1)(A).

Pursuant to § 2244(d)(1)(A), if a state prisoner does not appeal a state court judgment, the judgment of conviction becomes final after the expiration of the time allowed to seek direct review. *See Kapral v. United States*, 166 F.3d 565, 575, 578 (3d Cir. 1999); *Jones v. Morton*, 195 F.3d 153, 158 (3d Cir. 1999). In this case, the Superior Court sentenced petitioner on June 4, 2010, and he did not appeal that decision. Therefore, his judgment of conviction became final on July 6, 2010.¹ Applying one year to that date, petitioner had until July 6, 2011 to timely file his petition.

Petitioner did not file the instant application until May 4, 2014,² almost three full years after the expiration of the limitations period. Therefore, his habeas application is time-barred and should be dismissed, unless the limitations period can be statutorily or equitably tolled. The court will discuss each doctrine in turn.

## A. Statutory Tolling

Pursuant to § 2244(d)(2), a properly filed state post-conviction motion tolls AEDPA's limitations period during the time the action is pending in the state courts,

---

¹The limitations period actually ended on July 4, 2010, which was a Sunday. Since Monday, the next business day, was a Federal and State holiday, the limitations period extended through the end of Tuesday, July 6, 2010. *See* Del. Supr. Ct. R. 10.

²Pursuant to the prison mailbox rule, a pro se prisoner's habeas application is deemed filed on the date he delivers it to prison officials for mailing to the district court, not on the date the application is filed in the court. *See Longenette v. Krusing*, 322 F.3d 758, 761 (3d Cir. 2003); *Woods v. Kearney*, 215 F. Supp. 2d 458, 460 (D. Del. 2002)(date on petition is presumptive date of mailing and, thus, of filing). Applying this rule to the instant case, the court adopts May 4, 2014, as the date of filing because that is the date on petitioner's application.

including any post-conviction appeals, provided that the motion was filed and pending before the expiration of AEDPA's limitations period. *See Swartz v. Meyers*, 204 F.3d 417, 424-25 (3d Cir. 2000); *Price v. Taylor*, 2002 WL 31107363, at \*2 (D. Del. Sept. 23, 2002). A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002).

Petitioner filed his Rule 61 motion in the Delaware Superior Court on October 28, 2013, two years and three months after the expiration of AEDPA's limitations period in July 2011. As a result, the Rule 61 motion does not have any statutory tolling effect. Therefore, the application is time-barred, unless equitable tolling is available.

## B. Equitable Tolling

The one-year limitations period may be tolled for equitable reasons in rare circumstances when the petitioner demonstrates "(1) that he has been pursuing his rights diligently, **and** (2) some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 648-49 (emphasis added). With respect to the diligence requirement, the burden is on the petitioner to prove that he has been reasonably diligent in pursuing his rights;[3] equitable tolling is not available where the late filing is due to the petitioner's excusable neglect. *Id.* at 651-52; *Miller v. New Jersey State Dept. of Corr.*, 145 F.3d 616, 618-19 (3d Cir. 1998). A petitioner's obligation to act diligently applies to both his filing of the federal habeas application and to his filing of state post-conviction applications. *LaCava v. Kyler*, 398 F.3d 271, 277

---

[3]*See Urcinoli v. Cathel*, 546 F.3d 269, 277 (3d Cir. 2008).

4

(3d Cir. 2005). In turn, the Third Circuit has explained that extraordinary circumstances for equitable tolling purposes may be found where:

(1) the defendant actively misled the plaintiff;
(2) the plaintiff was in some extraordinary way prevented from asserting his rights; or
(3) the plaintiff timely asserted his rights mistakenly in the wrong forum.

*See Fahy v. Horn*, 240 F.3d 239, 244 (3d Cir. 2001).

In this case, petitioner concedes that his application is untimely, but appears to allege that the limitations period should be equitably tolled for three reasons. (D.I. 33 at 20) First, he contends that his former defense counsel failed to file a direct appeal (D.I. 33 at 20; D.I. 35 at 14-15) and did not provide him with a copy of his Rule 16 discovery until July 13, 2013 (D.I. 29 at 13; D.I. 32 at 19-20). Second, petitioner contends that he is actually innocent. (D.I. 35 at 15) Finally, he states that he "lacked knowledge of the law up until now." (D.I. 45 at 1)

The court construes petitioner's allegations regarding defense counsel's failure to file a direct appeal and defense counsel's failure to provide him with a copy of his Rule 16 discovery prior to July 13, 2013 as an argument that the limitations should be equitably tolled because his defense counsel provided ineffective assistance. The Supreme Court has recognized that an attorney's egregious error or neglect may constitute an extraordinary circumstance for equitable tolling purposes. *See Holland*, 560 U.S. at 635-54. An "egregious error" includes instances where an attorney fails to file an appeal after an explicit request from the petitioner,[4] "affirmatively deceives the

---

[4]*See Velazquez v. Grace*, 277 F. App'x 258 (3d Cir. 2008).

petitioner about filing a direct appeal," or "persistently neglects the petitioner's case." *Schlueter v. Varner*, 384 F.3d 69, 76-77 (3d Cir. 2004).

The court is not persuaded that defense counsel's failure to file a notice of appeal from petitioner's 2010 conviction and defense counsel's alleged failure to provide a copy of petitioner's Rule 16 discovery until July 2013 constitute "egregious errors" amounting to an extraordinary circumstance for equitable tolling purposes. *See Holland*, 560 U.S. at 651-52 ("We have previously held that a garden variety claim of excusable neglect such as a simple miscalculation that leads a lawyer to miss a filing deadline does not warrant equitable tolling."). To begin, petitioner has filed numerous replies to the State's answer and numerous supplemental petitions in this proceeding, and none of those documents assert that defense counsel: (1) failed to file a direct appeal after a specific request from petitioner; (2) deceived petitioner about filing a direct appeal; or (3) neglected petitioner's case. In addition, petitioner has not shown how counsel's failure to file a notice of appeal actually prevented him from filing a habeas application for more than three years. Finally, "allegedly ineffective assistance of counsel based on the failure to file an appeal does not constitute an extraordinary circumstance that would justify equitable tolling when the failure to appeal had been public knowledge and could have been discovered through the exercise of reasonable diligence." *Schmitz v. Taylor*, 2014 WL 6810384, at \*3 (D. S.C. Dec. 2, 2014). Here, petitioner does not allege, and nothing in the record indicates, that he either did not know or could not have discovered through the exercise of reasonable diligence that defense counsel did not file an appeal on his behalf.

6

As for defense counsel's alleged failure to provide petitioner with a copy of his
Rule 16 discovery prior to July 2013, the State court record contains an affidavit from
defense counsel asserting that he provided petitioner with copies of the State's
discovery responses during the pre-trial/pre-plea phase. (D.I. 24)  Even if defense
counsel did not provide petitioner with his Rule 16 discovery until July 2013, petitioner
could have obtained the Rule 16 discovery long before July 2013 through the exercise
of reasonable diligence, namely, by merely asking his former defense counsel for the
Rule 16 discovery.  Interestingly, petitioner does not indicate if he ever asked his former
counsel to provide the discovery prior to July 2013.

Additionally, the court is not persuaded by petitioner's assertion that he was
unable to determine the grounds for relief to include in the instant application until he
was provided with the Rule 16 discovery (D.I. 35 at 15; D.I. 42 at 2), because the
"delayed" Rule 16 discovery is unrelated to petitioner's contentions regarding defense
counsel's failure to file a direct appeal, his actual innocence,[5] and the incorrect and
excessive sentence.[6]  Moreover, once petitioner received the Rule 16 discovery in July
2013, he filed a Rule 61 motion in the Delaware Superior Court in October 2013, but

---

[5]Petitioner's actual innocence argument appears to be two-pronged.  First, he asserts
that there was no DNA evidence linking him to the rapes.  Second, he asserts that the
alleged victims consented to having sexual intercourse with him.  Although the Rule 16
discovery appears to have included the DNA reports and, therefore, relates to one
prong of petitioner's actual innocence argument, the Rule 16 discovery did not contain
any information regarding the victims' consent.  Indeed, if the victims had consented to
the sexual intercourse, petitioner would have known this "fact" without the Rule 16
discovery.

[6]Since the Superior Court informed petitioner of his sentence during the June 4, 2010
sentencing hearing, petitioner could have raised his "incorrect and excessive sentence"
argument any time after his June 4, 2010 sentencing hearing even without his Rule 16
discovery.

7

inexplicably waited until May 4, 2014 to file the instant application.  For all of these
reasons, the court concludes that petitioner has failed to demonstrate the necessary
causal relationship between the alleged extraordinary circumstance of counsel's actions
and his late filing of this § 2254 application.

Petitioner also contends that the limitations period should be equitably tolled
because he is actually innocent.  (D.I. 40 at 2; D.I. 41 at 2)  Although it is not entirely
clear, petitioner appears to assert he is innocent because there was no DNA evidence
and because the victims consented to the sexual intercourse.  (D.I. 35 at 11)

In *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1928 (2013), the Supreme Court held
that a credible claim of actual innocence may serve as an "equitable exception" that can
overcome the bar of AEDPA's one-year limitations period.  However, the *McQuiggin*
Court cautioned that "tenable actual-innocence gateway pleas are rare," and a petitioner
only meets the threshold requirement by "persuad[ing] the district court that, in light of
the new evidence, no juror, acting reasonably, would have voted to find him guilty
beyond a reasonable doubt." *Id.* at 1928.  An actual innocence claim must be based on
"new reliable evidence – whether it be exculpatory scientific evidence, trustworthy
eyewitness accounts, or critical physical evidence [] that was not presented at trial."
*Schlup v. Delo*, 513 U.S. 298, 324 (1995).  In the Third Circuit, evidence is "new" for the
purposes of the *Schlup* standard only if it was not available at the time of trial and could
not have been discovered earlier through the exercise of due diligence,[7] except in

---

[7]The circuits addressing the issue are split over what constitutes "new" evidence for
*Schlup* purposes. The Eighth Circuit's interpretation of "new" evidence corresponds
with the Third Circuit's, whereas the Seventh and the Ninth Circuits do not require the
exercise of due diligence, and view "new" evidence as evidence that was not

situations where that evidence was not discovered due to the ineffective assistance of trial counsel. *See Houck v. Stickman*, 625 F.3d 88, 93-94 (3d Cir. 2010). In turn, when determining if a petitioner's new evidence shows it is "more likely than not that no reasonable juror would have convicted him," a court must consider "all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." *House v. Bell*, 547 U.S. 518, 538 (2006). Finally, a court "may consider how the timing of the submission [of actual innocence] and the likely credibility of the affiant[] bear on the probable reliability of that evidence." *Schlup*, 513 U.S. at 332; *see also McQuiggin*, 133 S.Ct. at 1935.

The court rejects petitioner's unsupported assertion of actual innocence. To begin, petitioner's theories of actual innocence – no DNA evidence and consensual intercourse – are contradictory and mutually exclusive. Simply stated, by arguing that the victims consented to the sexual intercourse, petitioner admits to having had sexual intercourse with them, thereby rendering the existence or non-existence of DNA evidence irrelevant.

Moreover, as previously discussed, if the victims had consented to having sexual intercourse with petitioner, petitioner would have known that "fact" when he entered his plea. In addition, while petitioner may not have known the results of the DNA reports if he did not receive or review a copy of his Rule 16 discovery, he would have known that he never reviewed those reports at the time he entered the plea. During petitioner's

"presented" at trial. *See Kidd v. Norman*, 651 F.3d 947, 953 (8th Cir. 2011)(collecting cases).

9

sentencing hearing, the State described the numerous rapes that formed the basis for

petitioner's guilty but mentally ill plea. (D.I. 14 at 10) Petitioner spoke before the court

and explicitly accepted responsibility for committing those rapes. (D.I. 14 at 11)

Significantly, petitioner did not contend that he was actually innocent at that point in

time, he did not mention the issue of consent on the part of the victims, he did not

mention or inquire about DNA evidence, and he not indicate any reason to doubt his

assertion that he was responsible for the crimes charged. Therefore, the court

concludes that petitioner's current assertion of innocence fails to constitute new reliable

evidence satisfying the *McQuiggin/Schlup* standard.

Finally, to the extent petitioner's late filing was the result of his lack of legal

knowledge or his miscalculation of the one-year filing period, such mistakes do not

justify equitably tolling the limitations period. *See Taylor v. Carroll,* 2004 WL 1151552,

at \*5-6 (D. Del. May 14, 2004). For all of these reasons, the court concludes that the

doctrine of equitable tolling is not available to petitioner on the facts he has presented.

Accordingly, the court will dismiss the instant application as time-barred.[8]

## IV. PENDING MOTIONS

After the State filed its answer, petitioner filed numerous supplements to his

original application, which were construed to be supplements to his response to the

---

[8]In its discussion of the exhaustion requirement, the State notes that petitioner's Rule 61 motion is still pending before the Superior Court, and appears to assert that the instant application can be alternatively dismissed for failure to comply with the "total exhaustion" requirement of *Rose v. Lundy,* 455 U.S. 509, 518-19 (1982). (D.I. 22 at 5-6) The court's determination that the application is time-barred obviates the need to discuss this alternate reason for dismissal. Nevertheless, the court notes that dismissing the instant application without prejudice until the conclusion of petitioner's pending Rule 61 motion would not allow petitioner to avoid the time bar, because AEDPA's statute of limitations expired prior to the filing of his Rule 61 motion.

State's answer. (D.I. 36; D.I. 37; D.I. 38; D.I. 39) Those supplements essentially contend that his application should not be dismissed as time-barred in order to avoid a "miscarriage of justice." (D.I. 36; D.I. 37; D.I. 38; D.I. 39) Petitioner alleges that it would be a "miscarriage of justice" to dismiss the application as time-barred because he is actually innocent, lacks legal knowledge, and was provided ineffective assistance. The court notes that it has considered, and rejected, petitioner's "miscarriage of justice" arguments in its equitable tolling discussion.

In addition, petitioner has filed several "motions to amend," asking to either amend his original application or his supplemental filings by adding new claims. (D.I. 40; D.I. 41; D.I. 42; D.I. 43; D.I. 44; D.I. 45; D.I. 46) These motions also assert that his application should not be time-barred because he is actually innocent and lacked legal knowledge until recently. The court will deny these motions to the extent they attempt to add new claims to petitioner's habeas application, because they were filed after the expiration of the limitations period and filed one year and three months after the State filed its answer. *See* Fed. R. Civ. P. 15(a), (c); *United States v. Thomas*, 221 F.3d 430, 436 (3d Cir. 2000)(holding that, under Fed. R. Civ. P. 15(c), a district court "may, in its discretion, permit an amendment to a petition to provide factual clarification or amplification after the expiration of the one-year period of limitations, as long as the petition itself was timely filed and the petitioner does not seek to add an entirely new claim or new theory of relief."). However, to the extent the aforementioned motions assert responses to the State's limitations argument, the court notes that it has considered, and rejected, those arguments in its equitable tolling discussion.

11

## V.    CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 application, the court must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

If a federal court denies a habeas application on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the application states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Id.* "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Slack*, 529 U.S. at 484.

The court has concluded that petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 should be dismissed as time-barred and, alternatively, as meritless. Reasonable jurists would not find this conclusion to be debatable. Consequently, the court declines to issue a certificate of appealability.

12

## VI.   CONCLUSION

For the reasons stated, petitioner's application for habeas relief filed pursuant to

28 U.S.C. § 2254 is denied.  An appropriate order shall issue.